Case No: 11-16234 (Corvello)
Case No: 11-16242 (Lucia)

IN THE UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT

PHILLIP R. CORVELLO, On Behalf of Himself,
and All Others Similarly Situated,
And,
KAREN LUCIA and JEFFREY LUCIA, On Behalf of Themselves and
All Others Similarly Situated,
Plaintiffs - Appellants,

vs.

WELLS FARGO BANK N.A. d/b/a WELLS FARGO HOME MORTGAGE
d/b/a AMERICA'S SERVICING COMPANY,
Defendant - Appellee.

Appeal from the United States District Court
for the Northern District of California, San Francisco
No. 3:10-cv-05072-JSW (Corvello)
No. 3:10-cv-04749-JSW (Lucia)
The Honorable Jeffrey S. White

## APPELLANTS' OPENING BRIEF

| | |
|---|---|
| BLOOD HURST & O'REARDON LLP | STRANGE & CARPENTER |
| TIMOTHY G. BLOOD (149343) | BRIAN R. STRANGE (103252) |
| LESLIE E. HURST (178432) | GRETCHEN CARPENTER (180525) |
| THOMAS J. O'REARDON II (247952) | ADRIAN R. BACON (280332) |
| 701 B Street, Suite 1700 | 12100 Wilshire Blvd. Ste. 1900 |
| San Diego, CA 92101 | Los Angeles, CA 90025 |
| Telephone: 619-338-1100 | Telephone: 310-207-5055 |
| tblood@bholaw.com | lacounsel@earthlink.net |
| Attorneys for Plaintiff Corvello - Appellant | Attorneys for Plaintiffs Lucias- Appellants |
| [Additional counsel appear on signature page.] | [Additional counsel appear on signature page.] |

# TABLE OF CONTENTS

I.     JURISDICTIONAL STATEMENT      .        .        .        .        1

II.    ISSUES PRESENTED      .        .        .        .        .        1

III.   STANDARD OF REVIEW       .        .        .        .        .        2

IV.    STATEMENT OF THE CASE .        .        .        .        .        2

        A. Wells Fargo Breached the TPP Agreements       .        .        4

        B. Corvello's TPP Agreement .        .        .        .        6

        C. Lucias' TPP Agreement       .        .        .        .        8

V.     SUMMARY OF THE ARGUMENT .        .        .        .        9

VI.    ARGUMENT       .        .        .        .        .        .        12

        A. THE DISTRICT COURT ERRED BY DISMISSING
           PLAINTIFFS' BREACH OF CONTRACT CLAIMS       .        12

                1.  Plaintiffs' TPP Agreements Are Based on a Valid
                    Offer .        .        .        .        .        .        .        14

                2.  The TPPs Were Supported by Consideration .        .        19

                3.  Plaintiffs' TPPs Included Clear and Definite Terms        22

                4.  The Statute of Frauds Does Not Bar Plaintiffs' Claims,
                    and Wells Fargo is Estoped From Asserting the
                    Defense       .        .        .        .        .        .        26

        B. PLAINTIFFS SUFFICIENTLY HAVE ALLEGED BREACH
           OF THE IMPLIED COVENANT OF GOOD FAITH AND
           FAIR DEALING .        .        .        .        .        .        29

        C. THE DISTRICT COURT ERRED BY DISMISSING
           PLAINTIFFS' PROMISSORY ESTOPPEL CLAIM       .        31

i

D. THE LUCIAS PROPERLY PLED A VIOLATION OF
   CALIFORNIA'S ROSENTHAL FAIR DEBT
   COLLECTION PRACTICES ACT    .    .    .    .    36

   1. The District Court Erred by Relying on Language From a
      Written TPP Agreement    .    .    .    .    .    37

   2. Even Under Written TPP Agreement, the Lucias Pled
      A Violation of the Rosenthal Act    .    .    .    38

E. THE DISTRICT COURT ERRED BY DISMISSING
   PLAINTIFFS' CLAIMS UNDER CALIFORNIA'S
   UNFAIR COMPETITION LAW    .    .    .    .    43

   1. The District Court Erred by Equating Plaintiffs' UCL
      Claims With a Private Right of Action Under HAMP    44

   2. Plaintiffs Have Alleged That Wells Fargo's Actions
      Were Unlawful    .    .    .    .    .    .    48

   3. The District Court Erred in Finding That Wells Fargo Did
      Not Engage in Fraudulent Conduct    .    .    .    49

   4. Plaintiffs Have Alleged That Wells Fargo Violated the
      Unfairness Prong of the UCL    .    .    .    .    52

VII.   CONCLUSION    .    .    .    .    .    .    54

CERTIFICATE OF COMPLIANCE TO FED. R. APP. 32(a)(7)(C)
AND CIRCUIT RULE 32.1    .    .    .    .    .    57

STATEMENT OF RELATED CASES    .    .    .    .    58

CERTIFICATE OF SERVICE    .    .    .    .    .    59

# TABLE OF AUTHORITIES

## CASES

*A. J. Industrial, Inc. v. Ver Halen*,
75 Cal. App. 3d 751 (1977) ..................................................................19

*Aceves v. U.S. Bank, N.A.*,
192 Cal. App. 4th 218 (2011) ...............................................................32

*Aleem v. Bank Of America*,
2010 WL 532330 (C.D. Cal.)................................................................48

*Alliance Mortg. Co. v. Rothwell*,
10 Cal. 4th 1226 (1995) .......................................................................35

*Allen v. CitiMortgage, Inc.*,
2011 WL 3425665 (D. Md.) ..................................................................35

*Ansanelli v. JP Morgan Chase Bank, N.A.*,
2011 WL 1134451 (N.D. Cal.) .......................................................24, 41

*Arce v. Kaiser Foundation Health Plan, Inc.*,
181 Cal. App. 4th 471 (2010) ...............................................................53

*Ashcroft v. Iqbal*,
556 U.S. 662, 129 S. Ct. 1937 (2009)...................................................17

*In re Bank of America Home Affordable Modification Program (HAMP
Contract Litigation),*
2011 WL 2637222 (D. Mass.) ...........................................30, 35, 45, 46,

*Bell Atlantic Corp. v. Twombly*,
550 U.S. 544 (2007)..............................................................................33

*Belyea v. Litton Loan Servicing, LLP*,
2011 WL 2884964 (D. Mass.) ........................................... 21, 23, 24, 31

*Blakemore v. Superior Court*,
129 Cal. App. 4th 36 (2005) .................................................................47

*Bosque v. Wells Fargo Bank, N.A.*,
762 F. Supp. 2d 342 (D. Mass. 2011) ........................................15, 23, 46

*Carma Developers (Cal.), Inc. v. Marathon Development Cal., Inc.*,
2 Cal. 4th 342 (1992) ...............................................................29

*Carver v. Teitsworth*,
1 Cal. App. 4th 845 (1991) ........................................................22

*Cel-Tech Commc'ns, Inc. v. L.A. Cellular Telegraph Co.*,
20 Cal. 4th 163 (1999) ................................................46, 48, 52

*Cervantes v. City of San Diego*,
5 F.3d 1273 (9th Cir. 1993) .........................................................2

*Chabner v. United of Omaha Life Insurance Co.*,
225 F.3d 1042 (9th Cir. 2000) ..............................................12, 47

*City of L.A. v. Anchor Casualty Co.*,
204 Cal. App. 2d 175 (1962) ......................................................19

*Clark v. Capital Credit & Collection Services, Inc.*,
460 F.3d 1162 (9th Cir. 2006) .....................................................36

*Committee on Children's Television, Inc. v. General Foods Corp.*,
35 Cal. 3d 197 (1983) ...............................................................44

*Day v. AT & T Corp.*,
63 Cal. App. 4th 325 (1998) ..................................................40, 44

*Decker v. Advantage Fund Ltd.*,
362 F.3d 593 (9th Cir. 2004) ........................................................2

*In re Diego's Inc.*,
88 F.3d 775 (9th Cir. 1996) ........................................................28

*Durmic v. J.P. Morgan Chase Bank, NA*,
2010 WL 4825632 (D. Mass.) ......................................................20

*Elite Show Serv., Inc. v. Staffpro, Inc.*,
119 Cal. App. 4th 263 (2004) ...............................................................................22

*Escobedo v. Countrywide Home Loans, Inc.*,
2009 WL 4981618 (S.D. Cal.)..............................................................................33

*Faulkner v. One West,*
2010 WL 2472275 (N.D. W. Va.) ............................................................15, 24, 27

*Fletcher v. OneWest Bank, FSB*,
798 F.Supp.2d 925, (N.D.Ill.) ..........................................................................45, 46

*Gaudin v. Saxon Mortg. Services, Inc., No.* ,
2011 WL 5825144 (N.D. Cal.) ........................................................................20, 31

*Guerrero v. RJM Acquisitions LLC*,
499 F.3d 926 (9th Cir. 2007) .................................................................................40

*Hanson v. Wells Fargo Home Mortg.,*
2010 WL 3310615 (E.D. Ark.) ...............................................................................28

*Harris v. Time, Inc.*,
191 Cal. App. 3d 449 (1987) ..................................................................................19

*Hinshaw v. BAC Home Loans Servicing LP,*
2012 WL 407026 (D. Or.)........................................................................................31

*Hishon v. King & Spalding*,
467 U.S. 69 (1984)....................................................................................................2

*Hoffman v. Bank of America, N.A.,*
2010 WL 2635773 (N.D. Cal.) ...............................................................................33

*House v. Lala*,
214 Cal. App. 2d 238 (1963) ..................................................................................19

*Isaac v. A & B Loan Co.*,
201 Cal. App. 3d 307 (1988) ..................................................................................28

*JP Morgan Chase Bank, N.A. v. O'Neil*,
2011 WL 1408904 (Conn. Super.)..........................................................36

*Kasky v. Nike, Inc.*,
27 Cal. 4th 939 (2002) ..........................................................43, 46, 47, 48

*Kiser v. CitiMortgage, Inc., No.* ,
2011 WL 4699355 (N.D. Ohio)................................................................15

*Koontz v. Wells Fargo*,
2011 WL 1297519 (S.D. W.Va.) ..............................................................15

*Korea Supply Co. v. Lockheed Martin Corp.*,
29 Cal. 4th 1134 (2003) ..................................................................49, 52

*Livid Holdings Ltd. v. Salomon Smith Barney, Inc.*,
416 F.3d 940 (9th Cir. 2005) ...................................................................2

*Love v. United States*,
915 F.2d 1242 (9th Cir. 1989) .................................................................2

*Lozano v. AT&T Wireless Services Inc.*,
504 F.3d 718 (9th Cir. 2007) .................................................................44

*Lyons v. Bank of America, N.A.*,
2011 WL 3607608 (N.D. Cal.) ...............................................................22

*Marks v. Bank of America, NA*,
2010 WL 2572988 (D. Ariz.) .................................................................33

*McCollough v. Johnson, Rodenburg & Lauinger, LLC*,
637 F.3d 939 (9th Cir. 2011) .................................................................40

*McKell v. Washington Mutual, Inc.*,
142 Cal. App. 4th 1457 (2006) ...................................................43, 47, 50

*Okoye v. Bank of New York Mellon*
2011 WL 3269686 (D. Mass.) ...........................................................45, 46

*People ex rel. Lockyer v. Fremont Life Insurance Co.*,
104 Cal. App. 4th 508 (2002) ...................................................................48

*Picini v. Chase Home Finance LLC*,
2012 WL 580255 (E.D.N.Y. 2012) ............................................................21

*Raedeke v. Gibraltar Sav. & Loan Association*,
10 Cal. 3d 665 (1974) .........................................................................20, 27

*Reyes v. Wells Fargo Bank, N.A.*,
2011 WL 30759 (N.D. Cal.) .....................................................................41

*Rubio v. Capital One Bank*,
613 F.3d 1195 (9th Cir. 2010) ...........................................41, 44, 49, 52

*Russel v. Equifax A.R.S.*,
74 F.3d 30 (2d Cir. 1996)...........................................................................40

*Saunders v. Superior Court*,
27 Cal. App. 4th 832 (1994) .....................................................................48

*Schnall v. Hertz Corp.*,
78 Cal. App. 4th 1144 (2000) ...................................................................52

*Smith v. City & County of S.F.*,
225 Cal. App. 3d 38 (1990) .......................................................................32

*Smith v. Wells Fargo Bank, N.A.*,
135 Cal. App. 4th 1463 (2006) .................................................................47

*Stagikas v. Saxon Mortg. Services, Inc.*,
795 F. Supp. 2d 129 (D. Mass. 2011)..............................21, 37, 42, 45

*Stop Youth Addiction, Inc. v. Lucky Stores, Inc.*,
17 Cal. 4th 553 (1998) .........................................................................12, 47

*Swanson v. S. Or. Credit Serv.*,
869 F.2d 1222 (9th Cir. 1988) ..................................................................40

*Sybersound Records, Inc. v. UAV Corp.*,
517 F.3d 1137 (9th Cir. 2007) ..................................................49

*Terran v. Kaplan*,
109 F.3d 1428 (9th Cir. 1997) ...............................................40, 41

*Ticconi v. Blue Shield of California Life & Health Insurance Co.*,
160 Cal. App. 4th 528 (2008) ..................................................47

*In re Tobacco II Cases*,
46 Cal. 4th 298 (2009) ...........................................................49

*Troyk v. Farmers Group, Inc.*,
171 Cal. App. 4th 1305 (2009) ................................................46

*Turbeville v. JP Morgan Chase Bank, N.A.*,
2011 WL 7163111 (C.D. Cal.)...........................................15, 35

*Vissuet v. Indymac Mortg. Services*,
2010 WL 1031013 (S.D. Cal.) .................................................26

*Waller v. Truck Insurance Exch., Inc.*,
11 Cal. 4th 1 (1995) ...............................................................29

*Warren v. Merrill*,
143 Cal. App. 4th 96 (2006) ...................................................28

*Wigod v. Wells Fargo*,
2011 WL 250501 (N.D. Ill.) ..........6, 9, 11, 13, 14, 15, 18-20, 22, 23, 25, 35, 51, 52

*Wilcox v. EMC Mortg. Corp.*,
2011 U.S. Dist. LEXIS 82128 (C.D. Cal.).....................21, 24, 31, 35, 45

*Williams v. Gerber Products Co.*,
552 F.3d 934 (9th Cir. 2008) ..............................................49, 52

*Wilson v. Quadramed Corp.*,
225 F.3d 350 (3d Cir. 2000)....................................................40

*Wittenberg v. First Independent Mortg. Co.,*
2011 WL 1357483 (N.D. W.Va.) .............................................................15

## DOCKETED CASES

*Morales v. Chase Home Finance LLC,*
No. 11-16205.............................................................................................12, 58

## FEDERAL STATUTES

12 U.S.C. §§ 5201, *et seq.*..........................................................................3

12 U.S.C. §5219 .........................................................................................3

15 U.S.C. §1692a(2) ..................................................................................39

15 U.S.C. §§ 1692(e) and (f)) ................................................................36, 42

15 U.S.C. §3009........................................................................................47

28 U.S.C. §1291 ..........................................................................................1

28 U.S.C. §1332(d)(2)..................................................................................1

## FEDERAL RULES

Fed. R. Civ. P. 12(b)(6)...............................................................................1

Fed. R. App. P. 32(a)(7)(C) ........................................................................57

## STATE STATUTES

Cal. Civ. Code § 1698(c) .........................................................................26, 27

Cal. Civ. Code § 1788.17..........................................................................36

Cal. Civ. Code §§1572, 1573, 1709, 1710, 1711, 1770...........................................49

Cal. Bus. & Prof. Code §§17200 ............................................................43, 47, 48

 Cal. Bus. & Prof. Code §17204 ...........................................................46

## OTHER

*Restatement (Second) of Contracts*, § 205, Comment d (1981) ..............................30

# I.    JURISDICTIONAL STATEMENT

These consolidated appeals arise from dismissal on the pleadings of one case filed by plaintiff Phillip Corvello and another filed by plaintiffs Karen and Jeffrey Lucia (collectively "Plaintiffs").  On April 22, 2011, the district court issued an order granting Wells Fargo's motions to dismiss *Corvello* and *Lucia* under Federal Rules of Civil Procedure 12(b)(6) without leave to amend ("Order").  ER 1-17. Because the matters in controversy exceeded the sum or value of $5,000,000, and are class actions in which greater than two-thirds of the Class members are citizens of states different from Wells Fargo, the district court had jurisdiction under 28 U.S.C. §1332(d)(2).  This Court has jurisdiction under 28 U.S.C. §1291 to review the final orders of dismissal.

On April 22, 2011, judgment was entered in the cases.  ER 18-19.  Timely notices of appeal were filed on May 16, 2011.  ER 20-28.

# II.    ISSUES PRESENTED

1.    Whether the district court erred in ruling that plaintiffs failed to allege the existence of binding TPP Agreements.

2.    Whether the district court erred by dismissing plaintiffs' breach of TPP Agreement claims upon ruling that neither will be able to allege receiving a fully executed permanent modification agreement, despite well-pleaded allegations to the contrary.

3.    Whether the district court erred by dismissing the claims for breach of the implied covenant of good faith and fair dealing.

4.    Whether the district court erred in ruling that Wells Fargo made no promise upon which Plaintiffs could reasonable rely for their promissory estoppel claims.

5. Whether the district court erred in ruling that the Lucia plaintiffs failed to allege a Rosenthal Act claim upon finding they did not convincingly allege that the TPP Agreement or other modification-related communications were false, deceptive, or misleading.

6. Whether the district court erred in ruling that Plaintiffs may not assert UCL claims based on HAMP violations because HAMP does not provide a private right of action.

7. Whether the district court erred by dismissing Plaintiffs' UCL claims.

## III. STANDARD OF REVIEW

A district court's decision to grant a motion to dismiss for failure to state a claim is reviewed *de novo*. *Decker v. Advantage Fund Ltd.*, 362 F.3d 593, 595-96 (9th Cir. 2004). The court's review "is based on the contents of the complaint, the allegations of which we accept as true and construe in the light most favorable to the plaintiff." *Love v. United States*, 915 F.2d 1242, 1245 (9th Cir. 1989). "Dismissal for failure to state a claim is proper 'only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations.'" *Cervantes v. City of San Diego*, 5 F.3d 1273, 1274 (9th Cir. 1993) (quoting *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984)). Finally, a dismissal "without leave to amend is reviewed *de novo* and is improper unless it is clear that the complaint could not be saved by any amendment." *Livid Holdings Ltd. v. Salomon Smith Barney, Inc.*, 416 F.3d 940, 946 (9th Cir. 2005).

## IV. STATEMENT OF THE CASE AND FACTS

In response to Plaintiffs' class action complaints in these cases, Wells Fargo

moved to dismiss for failure to state a claim. The district court granted the motions without leave to amend and entered judgment, from which Plaintiffs now appeal.

These cases arise out of Wells Fargo's breaches of its contracts with Plaintiffs. These contracts arose as part of the Home Affordable Mortgage Program ("HAMP"). In the aftermath of the collapse of the U.S. housing market and foreclosure crisis, Congress created HAMP by passing the Emergency Economic Stabilization Act, as amended by the American Recovery and Reinvestment Act, 12 U.S.C. §§5201, *et seq.* (2010). HAMP authorized the Treasury Department to enter into "Servicer Participation Agreements ("SPAs") with the nation's largest mortgage servicers, including Wells Fargo, to "facilitate loan modifications and to prevent avoidable foreclosures" as a condition to a bank accepting TARP funds. 12 U.S.C. §5219.

The SPA between Wells Fargo and the Treasury Department requires Wells Fargo to perform a number of actions to benefit homeowners whose mortgages it services. ER 229-240. Under the terms of the SPA, Wells Fargo "shall perform" loan modifications and other foreclosure prevention services described in all "guidelines," "procedures," and "supplemental documentation, instructions, bulletins, frequently asked questions, letters, directives, or other communications" that the Treasury Department or its agents issue. ER 230. The Supplemental Directives ("SD") issued by the Treasury Department detail the loan modification

process, and the rights and obligations of participating servicers and borrowers. ER 353-390.

### A. Wells Fargo Breached the TPP Agreements

Wells Fargo must determine HAMP eligibility for all loans it services that are more than 60 days delinquent or for which a borrower requests an evaluation. ER 355-356.  For possible HAMP eligible loans, Wells Fargo must run a Net Present Value ("NPV") test to determine if modifying the loan will be profitable for the beneficial owners of the notes.  ER 212, 356.  If the outcome of the NPV test is "deemed positive … [Wells Fargo] ***MUST offer***" the borrower a Trial Period Plan ("TPP") during which the borrower will pay reduced monthly mortgage payments on a trial basis.  ER 304 (emphasis added).  Upon successful completion of the TPP's term, Wells Fargo is required to offer the qualified borrower a permanent loan modification.  ER 370 ("If the borrower complies with the terms and conditions of the Trial Period Plan, the loan modification will become effective on the first day of the month following the trial period…"); ER 214, 370.  No provision of the SPA authorizes Wells Fargo to refuse to extend an offer of a permanent loan modification to a qualifying borrower.  Moreover, the HAMP guidelines set forth the exact method for calculating the terms of the modification, including reducing or modifying the borrower's monthly mortgage payment to make it equal to approximately 31% of his/her gross income.  ER 211.

Wells Fargo contractually agreed with Plaintiffs to provide them permanent mortgage loan modifications as long as Plaintiffs fulfilled the conditions detailed in Wells Fargo's adhesive TPP Agreement. Under the TPP Agreement, Wells Fargo promised to send Plaintiffs a permanent loan modification agreement to sign if they made three "trial plan" payments, and met specified underwriting criteria for eligibility, including documenting their incomes. ER 201-202.

Plaintiffs fulfilled all of their obligations under the TPP Agreements, but Wells Fargo did not provide the permanent loan modifications for their signatures. Instead, Wells Fargo collected months of trial plan payments, repeatedly made unnecessary and duplicative information requests, repeatedly misevaluated Plaintiffs' plans and delayed in bad faith. Wells Fargo never offered Plaintiff Corvello the promised permanent loan modification to sign. ER 218. Likewise, rather than provide the Lucias with a permanent loan modification, Wells Fargo foreclosed on their home and sold it at a trustee's sale. ER 436-437. Wells Fargo's conduct constitutes a breach of the express terms of the TPPs, including the first sentence of Corvello's written TPP, which provides:

> If I am in compliance with this Loan Trial Period and my representations in Section 1 continue to be true in all material respects, then ***the Lender will provide me*** with a Loan Modification Agreement, as set forth in Section 3 [below], that would amend and supplement (1) the Mortgage on the Property and (2) the Note secured by the Mortgage.

ER 214, 392 (emphasis added). Likewise, Section 3 of Corvello's written TPP states that:

> If I comply with the requirements in Section 2 and my representations in Section 1 continue to be true in all material respects, ***the Lender will send me*** a Modification Agreement for my signature which will modify my Loan Documents as necessary to reflect this new payment amount and waive any unpaid late charges accrued to date.

ER 394 (emphasis added).

Wells Fargo seeks to escape liability for its conduct by arguing that the TPP Agreement was not really an agreement, and that it was unreasonable for Plaintiffs to rely on Wells Fargo's promises of loan modifications if they complied with the terms of the TPP. The only Court of Appeals to analyze whether a TPP constitutes a valid and enforceable agreement reviewed the same TPP that Wells Fargo provided to Corvello and reversed the district court's grant of a motion to dismiss without leave to amend, holding that the plaintiff had properly pled a breach of the TPP Agreement. *Wigod v. Wells Fargo Bank, N.A.*, --- F.3d ---, 2012 WL 727646, at *15-*27 (7th Cir. Mar. 7, 2012). Numerous district courts agree that claims based on banks' breaches of TPPs are well pled.

## B. Corvello's TPP Agreement

In May 2009, Corvello sought a loan modification from Wells Fargo because he was struggling to make his mortgage payments. ER 216. On May 27, 2009, Wells Fargo sent Corvello information about the permanent loan modification program and how to request assistance. ER 216, 414-415 (letter from

Wells Fargo to plaintiff).   Wells Fargo also required Corvello to complete an application seeking personal financial information and submit copies of paystubs. ER 414-415.   On June 25, 2009, Wells Fargo sent Corvello a "Financial Worksheet," which he completed and returned, along with the other requested information on July 10, 2009.  ER 216.

On July 17, 2009, Wells Fargo sent Corvello a written TPP Agreement with a cover letter stating, "If you qualify under the federal government's Home Affordable Modification program and comply with the terms of the Trial Period Plan, *we will modify* your mortgage loan and you can avoid foreclosure."  ER 216-217, 417-420 (emphasis added).  Wells Fargo's offer instructed Corvello to "Act Now!" and that "To accept this offer, and see if you qualify for a Home Affordable Modification, send the 5 items listed below … not later than 08/16/2009."  *Id.*  The adhesive TPP Agreement offered by Wells Fargo and signed by Corvello stated that "If I am in compliance with this Loan Trial Period and my representations in Section 1 continue to be true in all material respects, then the Lender *will provide me* with a Loan Modification Agreement."   ER 392-394 (emphasis added). Plaintiff Corvello timely complied with all of these requirements, including signing and returning the TPP Agreement.  ER 217.  As required by the terms of the TPP, Corvello timely made all required trial plan payments of $2,185.22 each on August 16, 2009, October 1, 2009, and November 1, 2009.  *Id.*

Although Corvello complied with all of the TPP requirements, Wells Fargo never offered him a permanent mortgage modification. ER 218.

## C.     Lucias' TPP Agreement

In late 2009, the Lucias were struggling to make their mortgage payments and decided to seek a loan modification from their servicer, Wells Fargo. ER 434. Although Wells Fargo was required to notify the Lucias about HAMP, Wells Fargo never did. *Id.* Instead, Wells Fargo told them that they had been considered and rejected for an in-house, non-HAMP modification. *Id.* The Lucias later contacted the Department of Housing and Urban Development, which told them about HAMP and directed them to apply for a HAMP modification. ER 434-435.

Ms. Lucia called Wells Fargo, provided financial information, and was approved for a temporary modification in February 2010. ER 434-435. The Lucias began making monthly trial period plan payments of $1,674 each. ER 435. Although TPPs should last only three months, Wells Fargo had not offered the Lucias a permanent modification by July 2010. *Id.* In July, Ms. Lucia called Wells Fargo to receive a status update and was told that she and her husband needed to submit a new financial statement form. ER 435-436. Wells Fargo said it would send the form and wait for the Lucias to return it. *Id.* The Lucias never received the form, so Ms. Lucia called Wells Fargo again. ER 436. This time,

Wells Fargo stated that the Lucias' trial plan had been terminated and that the Lucias' home would be foreclosed upon. *Id.*

That day, Ms. Lucia contacted a HUD-certified housing counselor. *Id.* She and her counselor called Wells Fargo, and Wells Fargo agreed that if it received financial documents and a hardship letter, the Lucias would be "reinstated" into HAMP. *Id.* The Lucias the request forms via facsimile. *Id.* About a week later, without any notice, Wells Fargo sold the home in a foreclosure sale. *Id.*

## V.  SUMMARY OF THE ARGUMENT

The district court misinterpreted the TPP Agreement, and on that basis, dismissed with prejudice all of Plaintiffs' claims.  The TPP Agreement "spells out two conditions precedent to Wells Fargo's obligation to offer a permanent modification: [Plaintiffs] had to comply with the requirements of the trial plan, and [Plaintiffs'] financial information had to remain true and accurate." *Wigod*, 2012 WL 727646, at *7.  According to Wells Fargo's TPP offer, Wells Fargo "will provide [Plaintiffs] with a [permanent] Loan Modification Agreement" after the trial period, if they were "in compliance with this Loan Trial Period" and their "representations [] continue to be true in all material respects."  ER 392.  Plaintiffs' compliance obligations with the loan trial period were spelled out in the TPP, and included requiring timely payment of specified trial period payments, and providing Wells Fargo with documentation of their incomes.  ER 392-394.  In

reliance on Wells Fargo's TPP offer, Plaintiffs timely made all of their trial period payments, submitted all required documentation, made all required attestations, and otherwise complied with all of their obligations according to the TPP Agreements. ER 217-218, 435-436.

According to the district court, dismissal of Plaintiffs' breach of contract, promissory estoppel, Rosenthal Act, and UCL claims were all appropriate (and amendment was futile) because Plaintiffs will not "be able to allege [] receiv[ing] a fully executed copy of a [permanent] Modification Agreement." ER 11. The district court's interpretation of the TPP rewrites the contract, and, as the Seventh Circuit recently held, would permit Wells Fargo to walk away from its TPP Agreement for any reason whatsoever. Plaintiffs complied with all terms of the TPP, but Wells Fargo did not provide the permanent Modification Agreements. Thus, the Complaints adequately allege a valid offer, acceptance, consideration, a breach, and damages from Wells Fargo's breach of the TPP Agreements.

The district court also erred by dismissing Plaintiffs' implied covenant of good faith and fair dealing claims. The only reason given by the district court for dismissing the implied covenant claims was that "Plaintiffs have not sufficiently alleged the existence of a contract for a permanent loan modification." ER 12. Upon compliance with the TPP Agreement's requirements, Wells Fargo was obligated to provide them with permanent modification agreements. Plaintiffs

never alleged that the TPP Agreement was itself a contract for a permanent loan modification. Plaintiffs also allege that Wells Fargo injured their rights to receive the benefits of the TPP Agreement by failing to service the loans in compliance with the TPPs, failing to supervise agents, making inaccurate calculations, and failing to communicate with Plaintiffs about the status of their loan modifications.

The district court erred by dismissing Plaintiffs' promissory estoppel claims. Based on a misreading of the Complaints and the TPP Agreement, the district court ruled that as a matter of law, the TPP Agreement does not require Wells Fargo to permanently modify mortgages, and that there were no promises made about permanent loan modifications on which Plaintiffs could reasonably rely. ER 13. Whether Plaintiffs' reliance on Wells Fargo's promises was reasonable is a question of fact – not law. Promissory estoppel is adequately alleged. *Wigod*, 2012 WL 727646, at *10-11.

The district court also erred by dismissing the Lucias' Rosenthal Act claim. ER 14-16. Premised on its ruling that the TPP Agreement itself was not a promise for a permanent modification, the district court ruled the Lucias did not demonstrate that the TPP Agreement or any Wells Fargo conduct was false, deceptive or misleading. Moreover, although the Lucias' TPP Agreement was an oral offer (unlike Mr. Corvello's written TPP Agreement), the district court relied

improperly and exclusively on language in the written TPP Agreement to interpret whether Wells Fargo's conduct was false, misleading, or deceptive.

For similar reasons, the district court improperly dismissed Plaintiffs' UCL claims. That is, based on its flawed interpretation that "the TPP Contract makes no promise of permanent modification," the district court ruled that the UCL unlawful, unfair, and fraudulent prong claims could not be properly pled. ER 17. Moreover, the district court erred by ruling that Plaintiffs may not assert UCL claims based on HAMP violations because HAMP does not provide a private right of action. The law is well-settled that unless the predicate statute ***expressly prohibits*** private enforcement, the statute is a proper unlawful prong predicate. *Stop Youth Addiction, Inc. v. Lucky Stores, Inc.*, 17 Cal. 4th 553, 557 (1998); *Chabner v. United of Omaha Life Ins. Co.*, 225 F.3d 1042, 1048 (9th Cir. 2000).

The district court's decisions should be reversed.

## VI.  ARGUMENT

### A.  THE DISTRICT COURT ERRED BY DISMISSING PLAINTIFFS' BREACH OF CONTRACT CLAIMS

In dismissing Plaintiffs' claims, the district court relied on cases that have dismissed similar claims, and followed its ruling issued eleven days earlier in a similar HAMP case against Chase Bank.[1]

---

[1] *Morales v. Chase Home Finance LLC*, which is also on appeal, Ninth Circuit Docket No. 11-16205, and fully briefed.

These rulings are at odds with the only appellate level authority on point. In *Wigod v. Wells Fargo Bank*, --- F.3d ---, 2012 WL 727646 (7th Cir. March 7, 2012) ("*Wigod*"), the Seventh Circuit held that plaintiff's allegations "that Wells Fargo agreed to permanently modify her home loan, deliberately misled her into believing it would do so, and then refused to make good on its promise" were sufficient to "support garden-variety claims for breach of contract or promissory estoppel . . . [and] unfair or deceptive business practices in violation of [Illinois' consumer protection law]." *Id.*

The TPP Agreement in *Wigod* was the same as Corvello's at issue here (and the terms of which the district court attributed to the Lucias as well). It provided that if Ms. Wigod timely made her trial period payments and her representations concerning her financial information continued to be true in all material respects, Wells Fargo would provide her with a permanent modification. Wigod further alleged that she made all payments due under the TPP and complied with all other obligations, but that Wells Fargo did not offer her a permanent modification. *Wigod,* 2012 WL 727646, at *4. As the district court did here, the district court in *Wigod* dismissed Ms. Wigod's claims without leave to amend, finding that the claims were premised on HAMP, and that because HAMP does not confer a private right of action on borrowers, Wigod could not pursue her claims.

The Seventh Circuit first discussed Wigod's claim for breach of contract.

*Id. a*t *5.  Wells Fargo argued, as it did here, that the TPP was not an enforceable contract because it contained no valid offer, there was no consideration, and the TPP did not include clear and definite terms.  The Seventh Circuit rejected each of these arguments, and this Court should do here.

### 1.  Plaintiffs' TPP Agreements Are Based on Valid Offers

Plaintiffs allege that Wells Fargo breached its TPP Agreements with them when it refused to offer permanent loan modifications after they successfully completed their TPPs.  As in *Wigod*, Wells Fargo made Plaintiffs valid offers.  A reasonable person in Plaintiffs' position "would read the TPP as a definite offer to provide a permanent modification that [a borrower] could accept so long as she satisfied the conditions."  *Wigod*, 2012 WL 727646, at *7.[2]

As the district court had done in *Wigod*, the district court here construed Plaintiffs' contract claim to be a claim that Wells Fargo's offer of a TPP was an offer to modify Plaintiffs' loan permanently.  Wells Fargo argued that it did not consent to modify Plaintiffs' loan permanently, and that providing a TPP did not "guarantee" a permanent loan modification.  However, Wells Fargo's argument is based on an incorrect construction of the TPP Agreement and HAMP guidelines in effect at the time Wells Fargo offered Plaintiffs a TPP.

---

[2] While the Lucias were not sent a written TPP Agreement, they alleged an oral TPP Agreement with substantially identical terms.  ER 434-435, 445-446.

Plaintiffs do *not* allege that the TPP was an offer to permanently modify Plaintiffs' loans. Instead, the TPP was a contract providing that Wells Fargo would offer Plaintiffs a permanent loan modification if they successfully completed their TPP and remained eligible for a permanent modification. ER 214. The basis of Plaintiffs' claim is not that the TPP "guaranteed" a permanent loan modification or constituted a permanent modification contract, but rather, that the TPP itself constituted a contract. ER 220, 445; *See also Wigod,* 2012 WL 727646, at *27; *Faulkner v. One West*, 2010 WL 2472275, at *8-9 (N.D. W. Va.) (TPPs are offers and once a borrower begins making modified payments, the offer is accepted); *Bosque v. Wells Fargo Bank*, 762 F. Supp. 2d at 351-53 (terms of acceptance are indicated in TPPs, and HAMP Guidelines refer to TPPs as offers).

Many courts agree that TPPs mandate permanent modifications when the borrower has complied with the terms of her TPP. *See Turbeville v. JP Morgan Chase Bank*, 2011 WL 7163111 at *2-5 (C.D. Cal.) (Sections 1 and 2 of TPP require lenders to respond to a successful trial period with a permanent modification); *Wittenberg v. First Indep. Mortg. Co.*, 2011 WL 1357483 at *20 (N.D. W.Va.) (failure to offer permanent modification after successful trial period is a breach of contract); *Koontz v. Wells Fargo*, 2011 WL 1297519 at *8 (S.D. W.Va.) (if bank assures borrower of pending modification, failure to modify can be breach of contract); *Kiser v. CitiMortgage, Inc.*, 2011 WL 4699355, at *3

(N.D. Ohio 2011) (same).

Here, Corvello's written TPP Agreement sets forth the agreement between the parties. The TPP states that if the borrower's "representations . . . continue to be true in all material respects, then [Wells Fargo] will provide [the borrower] with a Loan Modification Agreement . . . ." ER 214, 392-394. Similarly, the oral offer made to the Lucias was clear and explicit – if they complied with their obligations and made their TPP payments, Wells Fargo would provide them with a permanent modification. ER 434-435.

Wells Fargo denies it consented to offer Plaintiffs a permanent modification because applicable HAMP guidelines "expressly permitted a servicer to place a borrower on a trial plan *before* the servicer obtained all of the borrower's documentation and was able to determine eligibility for a permanent modification" (Motion at 8:7-9, citing ER 357, 369) and "contemplate[d] that the servicer would evaluate the borrower's NPV during the trial plan" (Motion at 8:9-10, citing ER 186). Wells Fargo could not, however, defer the HAMP eligibility analysis until after it offered the TPP. To the contrary, pursuant to the applicable HAMP guidelines, borrowers who received a *verbal* TPP offer and borrowers who received a written TPP already were determined to be initially eligible for HAMP (through the NPV analysis and determination of the approximate monthly

payment under the waterfall[3]), subject to verification of their financial information after their acceptance of the TPP offer. *See* ER 357; ER 177, ("Supplemental Directive 09-01 gave servicers the option of placing a borrower into a trial period plan based on verbal financial information obtained from the borrower, subject to later verification during the trial period.").

Moreover, the applicable HAMP guidelines provided:

> The borrower must be current under the terms of the Trial Period Plan at the end of the trial period to receive a permanent loan modification… ***If the borrower complies with the terms and conditions of the Trial Period Plan, the loan modification will become effective*** on the first day of the month following the trial period as specified in the Trial Period Plan.

ER 369-370 (emphasis added). These HAMP guidelines require Wells Fargo to offer permanent loan modifications when borrowers successfully completed the TPPs.

Wells Fargo further argued that Plaintiffs did not allege that they qualified for permanent loan modifications because they did not allege that their income supported modified loan payments under the waterfall, or that the NPV produced a positive result. Questions about Plaintiffs' eligibility for permanent modifications are issues of fact that are not appropriately decided on a Rule 12(b)(6) motion. *See Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937, 1960

---

[3] To calculate the terms of the modification, HAMP mandates a "waterfall" formula to calculate the reduced monthly payments; the borrowers' monthly payments are to be reduced as close as possible to 31 percent of their monthly income. *See* ER 211-212, 358, 360-362.

(2009) (on a motion to dismiss, well-pleaded factual allegations are assumed true).

Plaintiffs adequately have alleged their entitlement to a permanent modification on the basis of their compliance with the terms and conditions of the TPPs. ER 216-218, 434-436. Plaintiffs allege that Wells Fargo determined they were initially eligible or "pre-approved," for HAMP, at which point they were accepted into TPPs. *Id.* Plaintiffs then complied with all requests for documentation verification and timely made all trial payments. *Id*. Pursuant to the TPP Agreement and HAMP guidelines set forth above, Plaintiffs were entitled to a permanent loan modification after successfully completing their TPPs.

Despite these allegations, the district court found that no binding contract existed because Wells Fargo did not send Plaintiffs a fully executed copy of the Modification Agreement. ER 11. The court in *Wigod* rejected this argument:

> According to Wells Fargo, this provision meant that all of its obligations to Wigod terminated if Wells Fargo itself chose not to deliver "a fully executed TPP *and* 'Modification Agreement' by November 1, 2009." In other words, Wells Fargo argues that its obligation to send Wigod a permanent Modification Agreement was triggered only if and when it actually sent Wigod a Modification Agreement.
>
> Wells Fargo's proposed reading of section 2 would nullify other express provisions of the TPP Agreement. Specifically, it would nullify Wells Fargo's obligation to "send [Wigod] a Modification Agreement" if she "compl[ied] with the requirements" of the TPP and if her "representations … continue to be true in all material respects." TPP § 3. Under Wells Fargo's theory, it could simply refuse to send the Modification Agreement for any reason whatsoever – interest rates went up, the economy soured, it just didn't like Wigod – and there

would still be no breach.  Under this reading, a borrower who did all the TPP required of her would be entitled to a permanent modification only when the bank exercised its unbridled discretion to put a Modification Agreement in the mail.  In short, Wells Fargo's interpretation of the qualifying language in section 2 turns an otherwise straightforward offer into an illusion.

2012 WL 727646, at *7-8.  This Court should adopt the *Wigod* Court's reasoning and reverse the district court's ruling dismissing Plaintiffs' contract claims.

## 2. The TPPs were supported by consideration

The district court also erred in finding insufficient consideration to support Plaintiffs' TPP Agreements.  Consideration may consist of either a benefit to the promisor or a detriment to the promisee.  *City of L.A. v. Anchor Cas. Co.*, 204 Cal. App. 2d 175, 181 (1962).  Furthermore, "courts do not weigh the quantum of the consideration as long as it has some value."  *A. J. Indus., Inc. v. Ver Halen*, 75 Cal. App. 3d 751, 761 (1977); *see Harris v. Time, Inc.*, 191 Cal. App. 3d 449, 456 (1987) (recipient's act of opening envelope found to be sufficient consideration for sender).  As the court held in *House v. Lala*, 214 Cal. App. 2d 238 (1963):

> If the bargained-for performance which is rendered includes something that is not within the requirements of a preexisting duty, the law of consideration is satisfied.  It makes no difference that the agreed consideration consists almost wholly of a performance that is already required and that this performance is the main object of the promisor's desire.

*Id.* at 243 (internal citations omitted).

*Wigod* addressed this issue, as well.  "[C]onsideration consists of some detriment to the offeror, some benefit to the offeree, or some bargained-for

exchange between them." 2012 WL 727646, at *8 (citations omitted, interpreting Illinois law). When there is a preexisting debt, consideration is sufficient provided the "debtor does something more or different in character from that which it was legally bound to do." *Id.*

> *Wigod* held under identical circumstances as here:
>
> Here the TPP contained sufficient consideration because, under its terms, Wigod (the promisee) incurred cognizable legal detriments. By signing it, Wigod agreed to open new escrow accounts, to undergo credit counseling (if asked), and to provide and vouch for the truth of her financial information. Wigod's complaint alleges that she did more than simply agree to pay a discounted amount in satisfaction of a prior debt. In exchange for Wells Fargo's conditional promise to modify her home mortgage, she undertook multiple obligations above and beyond her existing legal duty to make mortgage payments. This was adequate consideration . . . .

2012 WL 727646, at *8; *see also Durmic v Advantage Fund Ltd.*, 2010 WL 4825632, at *3 (D. Mass.) (providing financial documentation sufficient); *Raedeke*, 10 Cal. 3d at 673 (act that was not originally part of the bargain and constituted detriment "through the expenditure of time and energy" was sufficient consideration); *Kennedy v. Wells Fargo Bank, N.A.*, 2011 WL 4526085, at *2 (C.D. Cal.) ("The complaint also alleges several items of consideration given by Plaintiff beyond what was expected in the original loan agreement."); *Gaudin v. Saxon Mortg. Services, Inc.*, 2011 WL 5825144, at *4 (N.D. Cal.) (plaintiff's exposure to "greater liability for interest and late charges should permanent modification not be consummated" constitutes sufficient consideration at the

pleading stage); *Wilcox v. EMC Mortg. Corp.*, 2011 U.S. Dist. LEXIS 82128 at *17 (C.D. Cal.) ("the TPP agreement allegedly required Plaintiffs to provide additional documentation to be considered for a modification" and "[b]ecause consideration encompasses any detriment to the promisee, no matter how small, Plaintiffs adequately pled consideration for the TPP Agreements"); *Belyea v. Litton Loan Servicing, LLP,* 2011 WL 2884964, at *8 (D. Mass.); *Stagikas v. Saxon Mortg. Servs., Inc.*, 795 F. Supp. 2d 129, 136 (D. Mass. 2011); *Picini v. Chase Home Finance LLC*, 2012 WL 580255 (E.D.N.Y.).

Here, Plaintiffs alleged they suffered the detriment of entering into the TPP Agreements, during which time each trial payment had negative credit consequences and was not immediately applied to their loan. ER 392-394, 433, 445-446. Plaintiffs also were required to make affirmations under penalty of perjury, and meet significant documentation requirements for the TPP. ER 217, 393, 434-437.

Here, too, Wells Fargo derived benefit because the TPPs included Wells Fargo's ability to demand that borrowers attend credit counseling. ER 363, 392. Moreover, Wells Fargo would receive further benefit in the event that Plaintiffs' HAMP modifications failed because it would retain all late fees and other servicing fees associated with reinitiating foreclosure. Wells Fargo also received substantial incentive payments from the federal government for agreeing to offer

borrowers HAMP modifications.   ER 206-207, 422, 427.   These constitute sufficient consideration.  *See Lyons v. Bank of America, N.A.*, 2011 WL 3607608, at *5 (N.D. Cal.) (plaintiffs' sparse allegation that they supplied defendants with all information requested was sufficient consideration).   Plaintiffs sufficiently alleged consideration.

### 3. Plaintiffs' TPPs included clear and definite terms

Wells Fargo asserted here that the TPPs did not include clear and definite terms.  *Wigod* rejected the same argument.  Under Illinois law, a contract's terms are sufficiently definite and certain "if from its plain terms it is ascertainable what each party has agreed to do."  2012 WL 727646, at *9.  The same is true under California law.  *See Elite Show Serv., Inc. v. Staffpro, Inc.*, 119 Cal. App. 4th 263, 268 (2004) ("Under California law, a contract is enforceable if it is sufficiently definite that a court can ascertain the parties' obligations thereunder and determine whether those obligations have been performed or breached.").  California does not require that *every* term be explicitly described in the contract.  *Id.* at 269 ("neither law nor equity requires that every term and condition of an agreement be set forth in the contract").  Terms that are "subject to objective determination" are certain enough to enforce.  *Carver v. Teitsworth*, 1 Cal. App. 4th 845, 853 (1991).

In *Wigod*, Wells Fargo argued that the TPP was not enforceable because "it

did not specify the exact terms of the permanent loan modification, including the

interest rate, the principal balance, loan duration, and the total monthly payment."

2012 WL 727646, at *9. Wells Fargo argued that "[b]ecause the TPP allowed the

lender to determine the precise contours of the permanent modification at a later

date, . . . it reflected no 'meeting of the minds' as to the permanent modification's

essential terms, so that it was an unenforceable 'agreement to agree.'" *Id.* Wells

Fargo made the same argument here. *See Lucia* Motion to Dismiss, at pp. 8-9.

Citing favorably to the district court decisions in *Belyea v. Litton Loan

Servicing, LLP*, 2011 WL 2884964 (D. Mass.) and *Bosque v. Wells Fargo Bank,

N.A.*, 762 F. Supp. 2d 342 (D. Mass. 2011), the Seventh Circuit disagreed with

Wells Fargo's contention, holding that the TPP was "hardly . . . a mere 'agreement

to agree.'" 2012 WL 727646, at *9. The court states that "HAMP guidelines

provided precisely this 'existing standard' by which the ultimate terms of Wigod's

permanent modification were to be set" and that those guidelines "unquestionably

informed the reasonable expectations of the parties to Wigod's TPP Agreement."

*Id.* The court reasoned that even though "trial terms were just an 'estimate' of the

permanent modification terms, the TPP fairly implied that any deviation from

them in the permanent offer would also be based on Wells Fargo's application of

the established HAMP criteria and formulas." *Id.; see also Bosque*, 762 F. Supp.

2d at 352 ("At a minimum, then, the TPP contains all essential and material terms

necessary to govern the trial period repayments and the parties' related obligations."); *Faulkner*, 2010 WL 2472275, at *8-9 (plaintiffs stated valid claim for breach of contract where they complied with all conditions of loan modification agreement and bank refused to modify loan); *Ansanelli*, 2011 WL 1134451, at *4-5 (allegations of the TPP terms were sufficiently definite); *Belyea*, 2011 WL 2884964 at *8 ("the essential terms in the TPP agreement governing the trial period are clearly specific enough to defeat a motion to dismiss"); *Wilcox*, 2011 U.S. Dist. LEXIS 82128 at *15 and n. 3 (C.D. Cal.) (a TPP "arguably does provide the essential terms for a permanent loan modification" and it is "plausible to assume, for purposes of a motion to dismiss, that the parties intended to incorporate the HAMP 'Waterfall Formula' into the [borrower's] TPP Agreement."); *Kennedy*, 2011 WL 4526085, at *2 ("The terms of the contract are not indefinite or uncertain; the TPP spells out explicitly the obligations of each party.").

Here, too, the terms are sufficiently definite and certain to constitute enforceable contracts. HAMP guidelines set forth specific and detailed methods for determining the terms of a HAMP loan modification. Wells Fargo was required to arrive at the terms prior to offering Plaintiffs the TPPs, by using the waterfall formula to arrive at modification terms that bring the borrower's initial monthly mortgage payment (including principal, interest, taxes, insurance, and

homeowners' association fees) to 31% of the family's gross income. ER 358, 360-362. The waterfall determines the new loan balance, the interest rate, the maturity date, the amount of any principal forbearance or forgiveness, and other loan terms. ER 361-361. Wells Fargo must then use these loan terms to test the NPV of the proposed final modification before offering a TPP, and then report the proposed terms to Fannie Mae at the start of the trial period. ER 356, 371-372, 381, 385-387. Because the terms of Plaintiffs' new loans would be determined according to established HAMP guidelines, the Court should reject any argument that the terms of the TPP are not clear and definite, just as the Seventh Circuit did in *Wigod*.

Finally, in *Wigod*, because Wells Fargo did not offer plaintiff a permanent modification, "even without reference to the HAMP modification rules, Wigod's complaint alleges that Wells Fargo breached its promise to provide her with a permanent modification once she fulfilled the TPP's conditions." *Wigod*, 2012 WL 727646, at *10. The court stated that even though "Wells Fargo may have had some limited discretion to set the precise terms of an offered permanent modification, it was certainly required to offer *some* sort of good-faith permanent modification to Wigod consistent with HAMP guidelines." *Id.* Wigod alleged that Wells Fargo did not do so and, therefore, breached its contract. The Seventh Circuit upheld these allegations. Just so here. Because Wells Fargo did not offer

Plaintiffs permanent modifications, it breached its contracts with them, even without reference to HAMP requirements.

**4. The statute of frauds does not bar Plaintiffs' claims, and Wells Fargo is estopped from asserting the defense**

Wells Fargo also argued in its Motions to Dismiss that Plaintiffs' breach of contract claims are barred by the statute of frauds. Wells Fargo asserted that the Lucias' oral contract was barred by the statute of frauds[4] and that Corvello's written contract also was so barred because he failed to allege the existence of an agreement signed by Wells Fargo. This fails because Plaintiffs do not allege that the TPPs themselves were permanent loan modification agreements. Because the TPPs were not "agreement[s] to modify a contract that is within the statute of frauds" (Motion 10:25-26), the statute of frauds does not apply.

In addition, California Civil Code section 1698(c) provides "a contract in writing may be modified by an oral agreement supported by new consideration." In *Vissuet v. Indymac Mortg. Servs.*, 2010 WL 1031013, at *1 (S.D. Cal.), for example, the lender orally informed the borrower that it would postpone the trustee's sale of her home if she completed and submitted a loan modification application. After the lender refused to postpone the trustee's sale, the borrower

---

[4] While the district court did not directly address this argument (and in fact treated the Lucias' oral contract as having identical terms to Corvello's written TPP), the district court did note in its order that "[t]he fact that the Lucias never received a written agreement from Wells Fargo regarding their participation in the Trial Period may be determinative" ER 9, (citation omitted).

sued for breach of contract. Pursuant to Section 1698(c), the court rejected the lender's statute of frauds defense on the grounds that the plaintiff's completion and submission of a loan modification application "was not something [she] was required to do under the original contract, and if not for the application, Plaintiff alleges she would have spent the time pursuing alternative measures to avoid foreclosure." *Id.* at *4. Because the borrower had alleged new consideration for oral modification of her contract, the statute of frauds did not bar her breach of contract claim. *Id.*; *see also Raedeke v. Gibraltar Sav. & Loan Ass'n*, 10 Cal. 3d 665, 673 (1974) (oral contract to postpone foreclosure sale enforceable because borrower's promise to obtain buyer constituted sufficient new consideration under Section 1698); *Kennedy*, 2011 WL 4526085, at *3 (rejecting same statute of frauds argument Wells Fargo made here). As set forth in section 2, *supra*, Plaintiffs have alleged new consideration for the TPPs.

Moreover, even if the statute of frauds applies, the part performance exception overcomes it. Plaintiffs performed their duties under the TPP Agreements by timely submitting reduced monthly mortgage payments during the trial period and performing their other responsibilities under the contracts. Because there was complete performance on Plaintiffs' part, the partial performance exception applies. *Faulkner*, 2010 WL 2472275, at *9 n. 4 (part performance exception triggered by acceptance of plaintiff's HAMP trial period

payments); *Warren v. Merrill*, 143 Cal. App. 4th 96, 113 (2006) ("part performance of the oral contract by paying $77,000 for the down payment on the condominium would satisfy the statute of frauds").

Finally, Wells Fargo is estopped from asserting a statute of frauds defense because Plaintiffs changed their position in reliance on the TPPs. "The doctrine of estoppel to assert the statute of frauds applies where an unconscionable injury would result from denying enforcement of the oral contract after one party has been induced by the other seriously to change his position in reliance on the contract. . . ." *In re Diego's Inc.*, 88 F.3d 775, 778 (9th Cir. 1996) (quoting *Isaac v. A & B Loan Co.*, 201 Cal. App. 3d 307, 313 (1988)). Plaintiffs allege that they reasonably relied on the TPPs offered by Wells Fargo, and submitted reduced monthly mortgage payments in accordance with the agreements, despite the fact that their existing mortgages remained in full force and effect. Rather than seeking other arrangements to prevent foreclosure, in reliance on the TPPs, Plaintiffs accrued greater fees and charges, became further delinquent on their mortgages, and further damaged their credit. ER 222, 445-448. Because Plaintiffs changed their position in reliance on the TPPs, Wells Fargo is estopped from asserting the statute of frauds defense.

*Hanson v. Wells Fargo Home Mortg.*, 2010 WL 3310615 (E.D. Ark.), is on point. In *Hanson*, the homeowners applied to Wells Fargo for a HAMP

modification.  Wells Fargo orally assured them that their application had been accepted and that they should begin making reduced monthly mortgage payments.  *Id.* at *1.  After making the payments, Wells Fargo threatened to foreclose if plaintiffs did not pay the full arrearage owed under the original mortgage.  *Id.*  The plaintiffs sued for breach of contract, promissory estoppel and statutory violations.  Wells Fargo asserted the same statute of frauds defense it asserted here, and the court ruled plaintiffs sufficiently alleged estoppel  because Wells Fargo's conduct induced action or forbearance on their part.  *Id.* at *3-4.  In the same way, Wells Fargo is estopped from asserting statute of frauds here.

### B.   PLAINTIFFS SUFFICIENTLY HAVE ALLEGED BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING

The covenant of good faith and fair dealing is implied in every contract.  *Carma Developers (Cal.), Inc. v. Marathon Dev. Cal., Inc.*, 2 Cal. 4th 342, 371 (1992).  The covenant derives from the principle "that neither party will do anything which will injure the right of the other to receive the benefits of the agreement."  *Waller v. Truck Ins. Exch., Inc.*, 11 Cal. 4th 1, 36 (1995).  Plaintiffs allege that Wells Fargo injured their rights to receive the benefits of the TPP Agreements by failing to service the loans in compliance with the TPPs, failing to supervise agents, making inaccurate calculations, and failing to communicate with Plaintiffs about the status of their loan modifications.  ER 214-215, 222, 224, 444.

In its motions to dismiss, Wells Fargo repeated its contract-based arguments, and the district court dismissed the claims for no reason other than that it was dismissing the contract claims. ER 12. Just as the district court erred with respect to Plaintiffs' contract claims, so too did it err with respect to Plaintiffs' claims for breach of the implied covenant.

Wells Fargo argued in its motions to dismiss that Plaintiffs' implied covenant claims are based on "pre-contractual conduct," but Plaintiffs have alleged numerous instances of bad faith occurring after commencement of the TPP Agreements, including, but not limited to, failing to permanently modify their loans and failing to properly supervise agents in the modification program. ER 214-215, 444. These actions occurred after borrowers entered into their TPPs, and are therefore post-contractual.

Wells Fargo's conduct constitutes a breach of the implied covenant of good faith and fair dealing. *See Restatement (Second) of Contracts*, § 205, Comment d (1981) (evasion of the spirit of the bargain, lack of diligence, and willful rendering of imperfect performance are violations). In the context of HAMP, numerous courts have held that servicer failure to modify eligible loans and provide proper training and supervision constitutes a breach of the covenant of good faith and fair dealing. *See In re Bank of Am. HAMP Litig.*, 2011 WL 2637222, at *5 (failure to modify eligible loans and provide proper training and supervision for agents);

30

*Belyea*, 2011 WL 2884964, at *9 (assertion that servicer failed to live up to its obligations under the TPP, failed to provide adequate training and staffing to perform its duties, and failed to supervise its agents and employees); *Hinshaw v. BAC Home Loans Servicing LP*, 2012 WL 407026, at *5 (D. Or.) (claim for breach of covenant stated where servicer "failed to have personnel available, adequately trained, and/or supervised, resulting in conflicting and contradictory information being given to plaintiff"); *see also Gaudin*, 2011 WL 5825144, at *5; *Kennedy*, 2011 WL 4526085, at *3. Plaintiffs adequately have alleged actions by Wells Fargo that constitute bad faith breaches of the implied covenant.

## C. THE DISTRICT COURT ERRED BY DISMISSING PLAINTIFFS' PROMISSORY ESTOPPEL CLAIM

Wells Fargo promised Plaintiffs permanent HAMP modifications if Plaintiffs complied with the terms of the TPP Agreements. ER 201-204, 213, 221-222, 434-435, 447-448. Plaintiffs entered into the TPP Agreements in reliance on that promise, reasonably believing they had been pre-screened and would be eligible for permanent modifications. ER 203-204, 209-210, 216-218, 221-222, 448. As a result of this reliance, they suffered harm. ER 217-218, 222, 435, 448.

Plaintiffs' allegations plead a "textbook claim" against Wells Fargo for promissory estoppel (*Wilcox*, 2011 U.S. Dist. LEXIS 82128, at *20-21), and it should be bound by its promises of permanent loan modifications because it

reasonably should have expected "a substantial change of position, either by act or forbearance, in reliance on [its] promise[s]." *Smith v. City & County of S.F.*, 225 Cal. App. 3d 38, 48 (1990) (citation and quotes omitted); *Aceves v. U.S. Bank, N.A.*, 192 Cal. App. 4th 218, 227 (2011) (borrower's claim that she refrained from seeking Chapter 13 bankruptcy protection in reliance on lender's promise to negotiate loan modification, then suffered harm when lender foreclosed, states promissory estoppel claim).

The district court based its erroneous dismissal of Plaintiffs' promissory estoppel claims on faulty readings of the complaints and HAMP directives. Specifically, the district court erred by (1) (as to the Lucias) relying on language from a written TPP Agreement to determine the existence of a promise, (2) misinterpreting the written TPP Agreement (as to Corvello) and HAMP guidelines, (3) misapplying the verification requirement by ignoring Plaintiffs' allegations that they had complied with all terms of the TPP Agreements, and (4) improperly deciding the factual question of whether Plaintiffs' reliance was reasonable.

In deciding the Lucias' promissory estoppel claim, the district court based its decision on language in a written TPP Agreement. ER 12. The Lucias, however, never received a written TPP Agreement. ER 434-435. Instead, they were promised by phone that if they sent in the required documents and made their payments on time, they would receive a permanent modification. *Id*. The district

court ignored the terms of the promise alleged in the Lucias' Complaint and instead analyzed the language of a written TPP Agreement. ER 12-14. By refusing to accept the content of the promise alleged in the Lucia Complaint, the court failed to take the allegations of the complaint as true. *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555-556 (2007).

Second, the district court improperly concluded that HAMP rules do not require Wells Fargo to modify eligible loans and used this incorrect interpretation to decide whether Plaintiffs reasonably relied on Wells Fargo's promises. ER 13. In reaching this conclusion, the district court relied on cases in which courts had construed servicers' contracts with the federal government to participate in HAMP, not the HAMP guidelines themselves. *See, e.g., Escobedo v. Countrywide Home Loans, Inc.*, 2009 WL 4981618, at *1-2 (S.D. Cal.) (plaintiff sued to enforce the SPA agreement between Countrywide and Fannie Mae as a third-party beneficiary).[5] The written TPP Agreement and HAMP guidelines in fact require Wells Fargo to offer permanent loan modifications to borrowers who successfully complete the trial period. ER 208-209, 214 ("Borrowers who make all trial period payments timely and who satisfy all other trial period requirements will be offered a permanent modification.") (*citing* HAMP Handbook at § 8); ER 214 ("The

---

[5] *See also Marks*, 2010 WL 2572988 (plaintiff sued to enforce SPA agreement between Bank of America and the U.S. Treasury); *Hoffman v. Bank of Am., N.A.*, No. C 10-2171 SI, 2010 WL 2635773 (N.D. Cal. June 30, 2010) (same).

standardized [TPP] provides that if the borrower satisfies the conditions precedent, then Wells Fargo will provide the borrower with a permanent Loan Modification Agreement[.]"); *Id.* ("Wells Fargo is obligated to provide those borrowers who satisfy the conditions precedent of the [TPP] agreement with personal loan modifications."); *see also* ER 356, 370 ("[i]f the borrower complies with the terms and conditions of the Trial Period Plan, the loan modification will become effective on the first day of the month following the trial period as specified in the Trial Period Plan"). These rules obligate Wells Fargo to provide borrowers who satisfy the conditions precedent of the TPP Agreement with an offer of a permanent loan modification. ER 201-202, 211-214.

Third, the district court misapplied the HAMP income verification requirements and failed to take into account Plaintiffs' allegations that they accurately had reported and verified their income. The income verification process is not relevant in determining whether Wells Fargo made promises to Plaintiffs and the class, because Wells Fargo was required to determine the borrowers' eligibility for modification (using the information provided orally or contained in the Initial Packet), perform the NPV test, and prepare the trial period plan *before* offering the TPP. *See supra* Section IV(A); *see also* ER 209-214. When Wells Fargo offered the TPP application to Plaintiffs, they reasonably believed that they had passed the screening procedure. ER 222. After receiving the TPPs, Plaintiffs submitted the

requisite documentation to confirm their income and satisfied the TPP's other conditions. ER 201-202, 216-218 (must provide documents to verify income); ER 202-204, 210, 213-214, 216-218 (plaintiffs performed all conditions under the TPP); *see In re Bank of Am. HAMP Contract Litig.*, 2011 WL 263722, at *5 (plaintiffs stated a promissory estoppel claim where the complaint alleged compliance with TPP conditions). The district court therefore erred in determining that Wells Fargo did not make Plaintiffs the promise of a permanent loan modification.

Finally, whether Plaintiffs reasonably relied on the TPP agreements that Wells Fargo provided them, in the context of other contract language and HAMP rules, is a question of fact, not law. *See, e.g., Wilcox*, 2011 U.S. Dist. LEXIS 82128, at *20-21 (reasonable reliance a question for the fact finder); *Alliance Mortg. Co. v. Rothwell*, 10 Cal. 4th 1226, 1239 (1995). Courts repeatedly have allowed borrowers' claims to proceed to discovery where the borrowers allege that they detrimentally relied on promises in HAMP TPPs. *See Wigod*, 2012 WL 727646, at *11 (plaintiff alleged sufficient detriment by foregoing "the opportunity to use other remedies to save her home (such as restructuring her debt in bankruptcy), and by devoting her resources to making the lower monthly payments under the TPP Agreement."); *Allen v. CitiMortgage, Inc.,* 2011 WL 3425665, at *8 (D. Md.); *Turbeville*, 2011 WL 7163111, at *5 (instead of "using their money to

pursue other means of curing their default" they "chose to participate in the trial," losing "both time and money in foregoing other opportunities to cure their defaults"); *JP Morgan Chase Bank, N.A. v. O'Neil*, 2011 WL 1408904, at \*6 (Conn. Super., 2011) (allegation that borrower "might have found something else to do with his money rather than continuing to make payments on a home he could no longer afford" in reliance on a [non-TPP] promise to modify is sufficient to allege detrimental reliance.).  The district court erred in dismissing Plaintiffs' promissory estoppel claim.

### D.    THE LUCIAS PROPERLY PLED A VIOLATION OF CALIFORNIA'S ROSENTHAL FAIR DEBT COLLECTION PRACTICES ACT

California's Rosenthal Fair Debt Collection Practices Act ("Rosenthal Act") prohibits Wells Fargo from making misrepresentations "in connection with the collection of any debt," or using deceptive, unfair or unconscionable means to collect any debt.  Cal. Civ. Code § 1788.17 (requiring compliance with the federal Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. §§ 1692(e) and (f)).  This Court has instructed lower courts to construe the language of the FDCPA liberally in order to effectuate the purpose of the statute.  *Clark v. Capital Credit & Collection Servs., Inc.*, 460 F.3d 1162, 1171, 1175 (9th Cir. 2006) ("[T]he purpose of the FDCPA is to protect consumers broadly from improper practices and the statute is to be interpreted liberally for this purpose.").  Courts broadly

construe the FDCPA to encompass any "unfair or unconscionable" claims that could fall under its plain language. *See Stagikas*, 795 F.Supp.2d 129, 138-39 (violations of the Massachusetts Consumer Protection Act may serve as the bases for a FDCPA claim even if they are not per se violations of the FDCPA, so long as they involve unfair or deceptive practices).

The Lucias' Complaint states a Rosenthal Act claim. The Complaint alleges Wells Fargo carried out a fraudulent scheme to induce Plaintiffs and other homeowners to continue making payment on their mortgages under the guise that those loans would be permanently modified. ER 422-424, 434-437. Wells Fargo made these promises through modification-related communications and a course of conduct that misled Plaintiffs into believing that Wells Fargo processes loan modifications according to the rules of HAMP. *Id.* In fact, Wells Fargo knew from the outset that it likely would deny the Lucias and other debtors' permanent loan modification applications and foreclose on their properties, but withheld this information and fueled false hope in order to extract additional funds from debtors' pockets. *Id.*

### 1. The District Court Erred by Relying on Language from a Written TPP Agreement

The district court decided in the Lucias' favor on each of the Rosenthal Act issues briefed by the parties, but then dismissed the claim on grounds never briefed or discussed at the hearing, and which are factually incorrect.

Specifically, the district court ruled that Plaintiffs could prove no set of facts in support of their Rosenthal Act claims because the allegedly fraudulent communications by Wells Fargo regarding modification of Plaintiffs' existing loan could not meet the "least sophisticated debtor" standard due to negating language in the written TPP Agreement. ER 15-16. The Lucias, however, alleged the existence of an oral TPP agreement with Wells Fargo, not a written one. ER 434-435.

To determine whether or not Wells Fargo's communications were misleading, the district court relied entirely on language from the "TPP Contract operative at the time." ER 15-16. But the Lucias made their TPP agreement by phone and never signed or received a written contract. ER 434-435. The district court erred by dismissing the Lucias' Rosenthal Act claims on factual grounds that do not apply.

### 2. Even Under the Written TPP Agreement, the Lucias Pled a Violation of the Rosenthal Act

The district court erred by focusing only on language in a non-existent written TPP Agreement, while ignoring all other communications between the parties. The Lucias alleged numerous communications with Wells Fargo that, taken as a whole, would mislead the "least sophisticated debtor" in violation of the Rosenthal Act. ER 15-16.

The district court did not evaluate Wells Fargo's entire course of alleged

conduct – from soliciting applications to language in form letters – to determine whether its conduct was unfair or misleading in violation of the Rosenthal Act, because the court held that phrases buried in other borrowers' written TPP agreements meant that Wells Fargo had not promised the Lucias a permanent modification.[6]   *Id.*   In so holding, the court ignored the crux of the Lucias' Rosenthal Act allegations: that communications by Wells Fargo taken as a whole constitute fraudulent, misleading and deceptive acts.  The Lucias allege that Wells Fargo made verbal and written assurances to them and others that all they would need to do to be granted permanent loan modifications is to complete a series of steps.  ER 422-424, 434-437.

Wells Fargo undertook this course of action knowing it likely would not provide the permanent loan modifications regardless of whether the borrowers complied with their obligations.  Wells Fargo used the Lucias' vulnerable state and its own informational advantage to extract additional payments through TPPs by promises of false hope, while withholding material information from the Lucias and other debtors.  *Id.*

In addition, the district court's analysis of the TPP Agreement language is inconsistent with the least sophisticated debtor standard.  To evaluate a claim under

---

[6] The FDCPA expressly defines the term "communications" broadly.  *See* 15 U.S.C. §1692a(2) ("communication" is "the conveying of information regarding a debt directly or indirectly to any person through any medium.").

the FDCPA, and therefore under the Rosenthal Act, a court must examine whether the "least sophisticated debtor" would be misled. *Guerrero v. RJM Acquisitions LLC,* 499 F.3d 926, 934 (9th Cir. 2007) (citing *Swanson v. S. Or. Credit Serv.*, 869 F.2d 1222, 1225 (9th Cir. 1988)). The "least sophisticated debtor" standard is designed to protect "the gullible as well as the shrewd . . . the ignorant, the unthinking, and the credulous." *McCollough v. Johnson, Rodenburg & Lauinger, LLC*, 637 F.3d 939, 952 (9th Cir. 2011) (citation and quotes omitted). It creates an even "*lower*" standard than whether "particular language would deceive or mislead a *reasonable* debtor." *Terran v. Kaplan*, 109 F.3d 1428, 1431-1432 (9th Cir. 1997) (emphasis added). Under the least sophisticated debtor standard, a communication that plausibly could be interpreted in two or more ways, at least one of which is misleading, violates the law. *See Russel v. Equifax A.R.S.,* 74 F.3d 30, 35 (2d Cir. 1996); *Wilson v. Quadramed Corp.*, 225 F.3d 350, 354 (3d Cir. 2000).

Mixed messages that are "accurate on some level" can still mislead or deceive. *Day v. AT & T Corp.*, 63 Cal. App. 4th 325, 332 (1998) (discussing the "likely to deceive" standard under California's Unfair Competition Law). In *Swanson v. S. Or. Credit Serv.*, 869 F.2d 1222 (9thCir. 1988), for example, this Court applied the "least sophisticated debtor" standard and found that conflicting language in communications could "overshadow" and "contradict" other statements, making the communications as a whole misleading. *Id.* at 1225-26; *see*

*also Terran*, 109 F.3d at 1433; *Rubio v. Capital One Bank*, 613 F.3d 1195, 1203-05 (9th Cir. 2010) (letter advertising "fixed" interest rate misleading even though it stated later that the rate was "subject to change" for other reasons). Similarly, verbal assurances made by Wells Fargo to Plaintiffs that they would qualify for a permanent modification, so long as they continued making TPP payments and submitted the necessary information to Wells Fargo, make Wells Fargo's communications as a whole misleading.

Not surprisingly, courts repeatedly have found that allegations similar to those pled here are sufficient to state a claim for unfair, misleading or deceptive debt collection practices. In *Reyes v. Wells Fargo Bank, N.A.*, 2011 WL 30759 (N.D. Cal.), for example, the plaintiff completed payments under a forbearance agreement (rather than a trial modification), but at the conclusion of the forbearance period, the defendant servicer declined to modify, and instead foreclosed. *Id.* at *8-13, 22. The plaintiff alleged that the servicer's conduct in inducing him to enter the forbearance agreement was deceptive and unfair, because the cover letter and forbearance agreement appeared to be consistent with HAMP – but were not. *Id.* at *68. The court held that these allegations stated a claim for misleading debt collection under the Rosenthal Act. *Id.; see also Ansanelli,* 2011 WL 1134451, at *2-3, 20, 27-28 (being "misled about the status and process of the loan modification" sufficient to state a claim under the Rosenthal Act); *see also*

*Stagikas*, 795 F.Supp.2d 129, 138-139 (borrower's allegations that servicer had failed to abide by the HAMP TPP stated a claim for violation of the FDCPA's § 1692(f), which prohibits unfair or unconscionable debt collection methods). The Lucias' claim under the Rosenthal Act is consistent with this line of cases.

The district court erred by allowing its view of the written TPP Agreement, which the Lucias never saw, to eclipse the remainder of Wells Fargo's misleading conduct alleged in Plaintiffs' Rosenthal Act claim. The Complaint alleges that borrowers were exposed to Wells Fargo's other modification-related communications. ER 422-424, 434-437. Together, these communications misled borrowers regarding their chances for modification and the length of the modification process, giving borrowers an inaccurate picture of the nature and purpose of their payments under the TPP. Such practices are precisely the type that the FDCPA (and the Rosenthal Act) is designed to curtail, as the aim of the statute is to "ensure that even the least sophisticated debtor is able to understand, make informed decisions about, and participate fully and meaningfully in the debt collection process." *Clark,* 460 F.3d at 1171. The Lucias' claims under the Rosenthal Act do not turn on whether or not Wells Fargo made an enforceable promise for permanent modification, but on whether or not Wells Fargo's conduct as a whole was misleading. For these reasons, the Court should reverse the district court's dismissal of the Lucias' Rosenthal Act claim.

### E. THE DISTRICT COURT ERRED BY DISMISSING PLAINTIFFS' CLAIMS UNDER CALIFORNIA'S UNFAIR COMPETITION LAW

The district court improperly reduced Plaintiffs' claims under the UCL to the sole allegation that Wells Fargo had not followed HAMP rules. The court's analysis was flawed because it failed to analyze all of the alleged UCL violations, instead considering only the Lucias' Rosenthal Act violation. ER 16-17. The district court dismissed Plaintiffs' UCL claims because "Plaintiffs do not dispute that HAMP does not create a private right of action," and "the UCL cannot create a private right of action where none exists under the federal statute." ER 16. California's Unfair Competition Law also prohibits any "unfair, deceptive, untrue, or misleading advertising." Cal. Bus. & Prof. Code §§17200 and 17500; *see also Kasky v. Nike, Inc.*, 27 Cal. 4th 939, 950 (2002). The "scope of the UCL is quite broad" and imposes strict liability on anyone who violates its prohibitions. *McKell v. Washington Mutual, Inc*., 142 Cal. App. 4th 1457, 1471 (2006). A business practice need only meet one of the three criteria ("unlawful," "unfair" or "fraudulent") to violate the UCL. *Id.* at 1471. Plaintiffs allege claims under each of the three prongs of the UCL. ER 223-225, 441-443.

Plaintiffs alleged a violation of law sufficient to meet the "unlawful" prong of the UCL. Plaintiffs also have alleged facts showing the "unfair" nature of Wells Fargo's conduct, and the conduct alleged is sufficient to meet the two tests for unfairness in the consumer context: (1) whether the harm to the consumer

outweighs the utility of the conduct in question, or (2) whether the practice violates a public policy that is tethered to a legislatively declared policy. *Rubio*, 613 F.3d at 1204-05; *Lozano v. AT&T Wireless Servs. Inc.*, 504 F.3d 718, 735-37 (9th Cir. 2007) (setting forth the tests for "unfair" business act or practice under UCL). Finally, Plaintiffs plausibly allege facts demonstrating that members of the public are likely to be deceived by Wells Fargo's conduct. *Comm. on Children's Television, Inc. v. Gen. Foods Corp.*, 35 Cal. 3d 197, 211 (1983); *Day v. AT&T Corp.*, 63 Cal. App. 4th 325, at 332-33 (1998).

### 1. The District Court Erred By Equating Plaintiffs' UCL Claims with a Private Right of Action Under HAMP.

The district court ignored the gravamen of Plaintiffs' UCL claims, focusing on one line of the Lucia Complaint and analyzing the unfairness claims as if they alleged only violations of HAMP. ER 16 (citing ER 442). Plaintiffs' UCL allegations, however, are not limited to Wells Fargo's failure to follow HAMP guidelines. Instead, Plaintiffs allege that Wells Fargo's violations of HAMP rules consisted of conduct that is independently actionable under the UCL. Moreover, the district court erred in ruling that violations of HAMP can never give rise to a cause of action under the UCL.

Plaintiffs base their UCL claims, in part, on allegations that Wells Fargo affirmatively misled or deceived its customers about how it would process their applications. These allegations are sufficient to state a claim under the UCL,

regardless of HAMP rules. *See, e.g.*, *In re Bank of America Home Affordable Modification Program (HAMP Contract Litigation)*, 2011 WL 2637222, at \*5-6 (D. Mass.) (allegations that servicers made deceptive, false or misleading representations about borrowers' eligibility for permanent loan modification under HAMP state a claim under various consumer protection statutes); *Fletcher v. OneWest Bank, FSB,* 798 F.Supp.2d 925 (N.D. Ill.) (borrower's claim that servicer's statements about how it would process her modification conflicted with its agreement to follow HAMP guidelines states a claim for deceptive business practice); *Wilcox*, 2011 U.S. Dist. LEXIS 82128, at \*23-24 (same). Wells Fargo's misuse of the HAMP program to trick borrowers into making more payments is actionable as an unfair business practice. *See Stagikas*, 795 F. Supp. 2d at 136-38 (allegations that servicer misled borrower applying for HAMP to induce him into making three payments state a claim); *see generally Okoye v. Bank of New York Mellon,* 2011 WL 3269686, at \*9-10 (D. Mass.) ("pattern of misrepresentations" and "dilatory conduct" by servicer sufficient to state a claim).

Plaintiffs' UCL claims allege independently actionable unfair business practices arising out of HAMP, not just a violation of HAMP rules. Treasury's very first HAMP directive recognized that servicers might engage in unfair or abusive practices while participating in HAMP, and so mandated that servicers comply not just with HAMP guidelines but with federal, state, and local consumer

protection laws.  ER 364.

Accordingly, numerous courts have recognized that state law claims are not an "end run" to a private right of action to enforce HAMP directives. "[C]laims under state consumer protection statutes may proceed even in the absence of a private means of recovery if the alleged violation is unfair or deceptive." *In re Bank of Am. HAMP Litig.*, 2011 WL 2637222, at *5-6; *Fletcher*, 798 F. Supp. 2d at 930-31 (no general rule that if conduct violates federal law but the federal law provides no private right of action, there can be no state law liability for the same conduct); *Okoye*, 2011 WL 3269686, at *12-18 (collecting cases).

The fact that a HAMP TPP has "a relationship to a federal statute and regulations does not require the dismissal of any state-law claims that arise under a TPP." *Bosque*, 762 F. Supp. 2d at 351.  Moreover, California courts repeatedly have permitted UCL claims for equitable relief even when the conduct alleged to constitute unfair competition violates a statute that does not provide a private right of action (provided the statute contains no explicit bar).  *Troyk v. Farmers Group, Inc.*, 171 Cal. App. 4th 1305, 1335 (2009) (citing *Kasky*, 27 Cal. 4th at 950); *Cel-Tech Commc'ns, Inc. v. L.A. Cellular Tel. Co.*, 20 Cal. 4th 163, 182-83 (1999).

The California Supreme Court "has made it clear" that under Business & Professions Code §17204, "a private plaintiff may bring a UCL action even when the conduct alleged to constitute unfair competition violates a statute for the direct

enforcement of which there is no private right of action." *Ticconi v. Blue Shield of California Life & Health Ins. Co.*, 160 Cal. App. 4th 528, 542 n.13 (2008) (quoting *Kasky,* 27 Cal. 4th at 950); *see also Smith v. Wells Fargo Bank, N.A.*, 135 Cal. App. 4th 1463, 1481 (2006) (unlawful prong claims predicated on violations of regulations issued by the Office of the Comptroller of the Currency); *Blakemore v. Superior Court*, 129 Cal. App. 4th 36, n.17 (2005) (not reaching whether a private right of action existed under 15 U.S.C. §3009 because "a private right of action under the predicate statute is not necessary in order to state a UCL violations based on that statute."); *McKell*, 142 Cal. App. 4th at 1475 ("Even if the violation of another law does not create a private right of action, if the violation constitutes unfair competition, it is actionable."); *Chabner v. United of Omaha Life Ins. Co.*, 225 F.3d 1042, 1048 (9th Cir. 2000) ("It does not matter whether the underlying statute also provides for a private cause of action; section 17200 can form the basis for a private cause of action even if the predicate statute does not."). Unless the UCL or the predicate statute ***expressly prohibits*** private enforcement, the statute is a proper unlawful prong predicate. *Stop Youth Addiction, Inc. v. Lucky Stores, Inc.*, 17 Cal. 4th 553, 557 (1998). Wells Fargo does not contend that the UCL or HAMP expressly prohibit private enforcement. Pursuant to *Kasky* and *Stop Youth Addiction*, therefore, HAMP is a proper UCL predicate statute, and the district

court erred to conclude otherwise.[7]  ER 16-17.

## 2. Plaintiffs Have Alleged that Wells Fargo's Actions Were Unlawful

The UCL's unlawful prong is essentially an incorporate-by-reference provision. "By proscribing 'any unlawful' business practice, 'Section 17200 "borrows" violations of other laws and treats them as unlawful practices' that the unfair competition law makes independently actionable." *Cel-Tech*, 20 Cal. 4th at 180. "With respect to the unlawful prong, '[v]irtually any state, federal or local law can serve as the predicate for an action' under section 17200." *People ex rel. Lockyer v. Fremont Life Ins. Co.*, 104 Cal. App. 4th 508, 515 (2002) (emphasis omitted); *Saunders v. Superior Court*, 27 Cal. App. 4th 832, 838-39 (1994) ("The 'unlawful' practices prohibited by section 17200 are any practices forbidden by law, be it civil or criminal, federal, state, or municipal, statutory, regulatory, or court-made.").

The district court erred by rejecting Plaintiffs' UCL unlawful prong claims on the basis that the Rosenthal Act violation had not been pled properly.  ER 17. As discussed above, the Lucia Plaintiffs properly pled violations of the Rosenthal Act. (*See* Section VI.D, *supra*.)  Moreover, the district court failed to consider any

---

[7]  Not citing California Supreme Court opinions in *Kasky* and *Stop Youth Addiction*, the court in *Aleem*, the only opinion cited by the district court (and Wells Fargo) on this point, incorrectly holds that failing to allege that HAMP provides a private right of action justifies dismissal of the UCL claim to the extent it is based upon HAMP.  *Aleem v. Bank of America*, 2010 WL 532330, at *3-4, (C.D. Cal.).

of the unlawful prong predicate statutes pled by Corvello: Civil Code §§1572, 1573, 1709, 1710, 1711, 1770, HAMP and the California Foreclosure Prevention Act. ER 223. Plaintiffs properly alleged violations of the common law, including breach of contract, as UCL violations as well. *Korea Supply Co. v. Lockheed Martin Corp.*, 29 Cal. 4th 1134, 1159 (2003) ("[w]e conclude, therefore, that an act is independently wrongful if it is unlawful, that is, if it is proscribed by some constitutional, statutory, regulatory, **common law**, or other determinable legal standard") (emphasis added); *Sybersound Records, Inc. v. UAV Corp.*, 517 F.3d 1137, 1152 (9th Cir. 2007) (breach of contract may form the predicate for a UCL claim if the breach is unlawful, unfair or fraudulent).

### 3. The District Court Erred in Finding That Wells Fargo Did Not Engage In Fraudulent Conduct.

The "[fraudulent] prong of the UCL is 'governed by the reasonable consumer test': a plaintiff may demonstrate a violation by 'showing that reasonable members of the public are likely to be deceived.'" *Rubio*, 613 F.3d at 1204 (quoting *Williams v. Gerber Prods. Co.*, 552 F.3d 934, 938 (9th Cir. 2008)); *In re Tobacco II Cases*, 46 Cal. 4th 298, 312 (same). To be actionable under the UCL, the deception "need not be intended." *Rubio*, 613 F.3d at 1204. Whether conduct is "likely to deceive" "will usually be a question of fact not appropriate for decision on demurrer." *Williams*, 552 F.3d at 938. The "rare situation in which granting a motion to dismiss is appropriate" is when the conduct itself "makes it

impossible for the plaintiff to prove that a reasonable consumer was likely to be deceived." *Id.* at 939; *see also McKell*, 142 Cal. App. 4th at 1472 (the determination of whether a practice is likely to deceive is a "question of fact, requiring consideration and weighing of the evidence from both sides before it can be resolved").

Here, the district court dismissed the UCL claims on the sole basis that the language in the TPP itself makes no promise of a permanent modification. ER 17. Dismissing the Lucias' UCL claim on this basis was erroneous because they never received a written TPP Agreement and never saw the language that the district court analyzed. ER 434-435. The Lucias were in fact deceived in telephone communications with Wells Fargo. *Id.* The district court erred in dismissing Corvello's UCL claim because the factfinder reasonably could conclude that Wells Fargo's conduct as a whole would be likely to deceive a reasonable consumer. The very first sentence of the uniform TPP Agreement sent by Wells Fargo to Corvello stated:

> If I [Borrower] am in compliance with this Loan Trial Period and my representations in Section 1 continue to be true in all material respects, then the Lender will provide me with a Loan Modification Agreement, as set forth in Section 3, that would amend and supplement (1) the Mortgage on the Property, and (2) the Note secured by the Mortgage.

*See* ER 214, 392-394. The TPP Agreement also guaranteed that if a borrower

receives a TPP Agreement and complies with the terms of the TPP Agreement, including submitting required financial documentation and making three timely "Trial Period Payments" consisting of a specified modified monthly mortgage payment, Wells Fargo will send the borrower "a [permanent] Modification Agreement for [his] signature which will [permanently] modify [his] Loan Documents as necessary to reflect this new payment amount and waive any unpaid late charges accrued to date." *See* ER 392-394.

In reliance of Wells Fargo's promises that it would send him a permanent modification, Corvello signed the TPP Agreement, made the required attestations, and timely sent Wells Fargo all requested documentation and all three TPP payments. ER 217-218. "Although plaintiff complied with all requirements, including timely submitting all three of his Trial Period Plan payments, Wells Fargo never offered him a permanent mortgage modification." ER 218. The conclusion follows that Wells Fargo misrepresented that it would offer Plaintiffs permanent modifications if they complied with the terms and conditions of the TPP Agreement.

Despite Wells Fargo's express, repeated promises that it would act and send Plaintiffs permanent loan modification agreements to sign if they complied with specified requirements, it failed to do so. According to *Wigod*, "the TPP as a whole supports [plaintiff's] reading of it to require Wells Fargo to offer her a

permanent modification once it determined she was qualified and sent her an executed copy, and she satisfied the conditions precedent." *Wigod*, at *47. This is not the "rare situation in which granting a motion to dismiss" UCL claims is appropriate. *Williams*, 552 F. 3d at 939. The Court should allow Plaintiffs the opportunity to prove the deceptiveness of Wells Fargo's conduct under the UCL.

### 4. Plaintiffs Have Alleged that Wells Fargo Violated the Unfair Prong of the UCL

"[A] practice may be deemed unfair even if not specifically proscribed by some other law." *Korea Supply*, 29 Cal. 4th at 1143. Under the unfairness prong, a plaintiff must allege that "the harm to the consumer" outweighs the conduct's utility or that the "practice violates public policy as declared by specific constitutional, statutory, or regulatory, provisions." *Rubio*, 613 F.3d at 1204-05. The unfair prong is "'intentionally broad, thus allowing courts maximum discretion to prohibit new schemes to defraud.'" *Schnall v. Hertz Corp.*, 78 Cal. App. 4th 1144, 1166 (2000). As the California Supreme Court has emphasized: "'In permitting the restraining of all "unfair" business practices,'" the UCL "'undeniably establishes only a wide standard to guide courts of equity .... [G]iven the creative nature of the scheming mind, the Legislature evidently concluded that a less inclusive standard would not be adequate.'" *Cel-Tech*, 20 Cal. 4th at 181.

In addition to breaching its contractual obligations under the TPP Agreements, Wells Fargo misleads borrowers into making trial period payments

before it completes the underwriting process, manipulates the underwriting process resulting in the rejection of eligible borrowers, violates the public policies behind HAMP, and collects trial period payments from borrowers it knows will not qualify for a permanent loan modification. ER 202, 215, 223-224. These latter allegations are independent of Wells Fargo's breach of the TPP Agreements. Plaintiffs have stated independent claims under the unfair prong because "a systematic breach of certain types of contracts (*e.g.*, breaches of standard consumer or producer contracts involved in a class action) can constitute an unfair business practice under the UCL." *Arce v. Kaiser Found. Health Plan, Inc.*, 181 Cal. App. 4th 471, 490 (2010). Moreover, Plaintiffs properly alleged that Wells Fargo's conduct violates the public policies behind HAMP, policies that require Wells Fargo to service eligible mortgage loans so that at-risk borrowers will be better able to afford their mortgage payments. ER 206-208, 223-224. Plaintiffs' UCL allegations meet the balancing test for the unfairness prong. That is, Plaintiffs properly allege that the gravity of the harm of Wells Fargo's conduct (luring borrowers into the HAMP program and requiring them to submit documents and make trial period payments while foregoing other foreclosure alternatives) substantially outweighs any possible business justification or utility that Wells Fargo might have. ER 223-224.

## VII.  CONCLUSION

For all the foregoing reasons, the judgments must be reversed.

Dated:  March 23, 2012

BLOOD HURST & O'REARDON, LLP
TIMOTHY G. BLOOD (149343)
LESLIE E. HURST (178432)
THOMAS J. O'REARDON II (247952)

By:          s/  Timothy G. Blood
`              TIMOTHY G. BLOOD
701 B Street, Suite 1700
San Diego, CA  92101
Telephone: 619/338-1100
619/338-1101 (fax)
tblood@bholaw.com
lhurst@bholaw.com
toreardon@bholaw.com

Attorneys for Plaintiff Corvello

Dated:  March 23, 2012

STRANGE & CARPENTER
BRIAN R. STRANGE (103252)
GRETCHEN CARPENTER (180525)
ADRIAN R. BACON (280332)

By:    s/  Gretchen Carpenter
`              GRETCHEN CARPENTER

12100 Wilshire Blvd., Suite 1900
Los Angeles, CA 90025
Telephone: 310/207-5055
310/826-3210 (fax)
lacounsel@earthlink.net
gcarpenter@strangeandcarpenter.com
abacon@strangeandcarpenter.com

Attorneys for Plaintiffs Karen Lucia and
Jeffrey Lucia

BONNETT, FAIRBOURN, FRIEDMAN
  & BALINT, P.C.
ANDREW S. FRIEDMAN
ELAINE A. RYAN
PATRICIA N. SYVERSON (CA
203111)
2901 N. Central Avenue, Suite 1000
Phoenix, AZ  85012-3311
Telephone:  602/274-1100
602/798-5825 (fax)
afriedman@bffb.com
eryan@bffb.com
psyverson@bffb.com

BONNETT, FAIRBOURN, FRIEDMAN
  & BALINT, P.C.
TODD D. CARPENTER (CA 234464)
600 West Broadway, Suite 900
San Diego, CA 92101
Telephone:  619/756-7095
602/798-5825 (fax)
tcarpenter@bffb.com

PATTERSON LAW GROUP
JAMES R. PATTERSON (CA 211102)
402 West Broadway, 29th Floor
San Diego, CA  92101
Telephone:  619/398-4760
619/756-6991 (fax)
jim@pattersonlawgroup.com

Attorneys for Plaintiff Corvello

PUBLIC COUNSEL
HERNÁN VERA (175149)
610 South Ardmore Avenue
Los Angeles, California  90005
Telephone:  213/385-2977
213/385-9089 (fax)

hvera@publiccounsel.org

Attorneys for Plaintiffs Karen Lucia and
Jeffrey Lucia

# CERTIFICATE OF COMPLIANCE TO FED. R. APP. 32(a)(7)(C) AND CIRCUIT RULE 32-1

Pursuant to Fed. R. App. P. 32(a)(7)(C) and Ninth Circuit Rule 32-1, I certify that the attached brief is proportionately spaced, has a typeface of 14 points and contains 13,063  words.


Dated: March 23, 2012                    By:            s/ *Timothy G. Blood*
                                                                   TIMOTHY G. BLOOD

## STATEMENT OF RELATED CASES

Appellants are aware of the following related case which raises the same or closely related issues: *Morales v. Chase Home Finance LLC*, Case No. 11-16205

Dated: March 23, 2012          By:          s/ *Timothy G. Blood*
                                                        TIMOTHY G. BLOOD

CERTIFICATE OF SERVICE

I hereby certify that on March 23, 2012, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the e-mail addresses denoted on the Electronic Mail Notice List.

I certify under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed on March 23, 2012.

s/ *Timothy G. Blood*

TIMOTHY G. BLOOD

BLOOD HURST & O'REARDON, LLP
600 B Street, Suite 1550
San Diego, CA 92101
Telephone: 619/338-1100
619/338-1101 (fax)
lhurst@bholaw.com